Jacquelyn B. N'Jai
PO Box 10133
Pittsburgh, PA 15232

IN THE FEDERAL DISTRICT COURT FOR THE WESTERN DISTRICT OF

PENNSYLVANIA

10 - 1323

| | |
|---|---|
| JACQUELYN B. NJAI, , <br><br> Plaintiff, <br><br> vs. <br><br> PITTSBURGH BOARD OF PUBLIC EDUCATION; IMANI CHRISTIAN ACADEMY; NAACP; MR. MILTON RAIFORD JR; Dr. MARLON BARNETT; SHERICE COLES; MAISHA JOHNSON; JASON WASHINGTON; and DERRICK TURNER. <br><br> Defendants. | Case No.: <br><br> **COMPLAINT: 2** <br><br> 1. BREACH OF CONTRACT <br> 2. DEFAMATION AND ASSUALT OF CHARACTER <br> 3. NEGLIGENCE <br> 4. INVASION OF PRIVACY : TORT <br> 5. SECTION 1981a, 1981 <br> 6. RETALIATION: BECAUSE OF 1-5 OPPOSITION <br><br> **RECEIVED** <br><br> OCT 08 2010 <br><br> CLERK, U.S. DISTRICT COURT <br> WEST. DIST. OF PENNSYLVANIA |

Plaintiff Jacquelyn B. N'Jai brings forth the following causes of action and alleges the following:

JURISDICTION:

1. Plaintiff is an individual and resident of Pittsburgh, Pennsylvania.

2. Defendant-Imani Christian Academy is a semi-private educational and religious institution, within Pittsburgh, Pennsylvania.

**Complaint—** 1

3. Milton Raiford, Jr., Headmaster of Imani Christian Academy, is a resident and/or worker within Pittsburgh, Pennsylvania.

4. Dr. Marlon Barnett, Principal is a resident and worker within Pittsburgh, Pennsylvania.

5. Maisha Johnson, Vice Principal is a resident and worker within Pittsburgh, Pennsylvania.

6. Jason Washington, Worship Leader of Imani Christian Academy and Minister of Petra International Ministries works in and/or is a resident in or around Pittsburgh, Pennsylvania.

7. Sherice Coles, Director of NIA Department in Imani Christian Academy, Elder of Petra International Ministries resides and works in Pittsburgh, Pennsylvania; and

8. National Association For the Advancement of Colored People, Pittsburgh Chapter, is stationed in the Pittsburgh, Pennsylvania area (Marlon Barnet as Chair of the NAACP, Education Committee).

STATEMENT OF FACTS:

9. From 8/13/07-8/09, Dr. Barnett ordered teachers to put name and social security numbers onto a form the was headed: PENNSYLVANIA DEPARTMENT OF EDUCATION, Imani Christian Academy, Act 48 Credits, and the dates.

10. Plaintiff found out when she checked her Act 48 credits towards maintaining the permanency of her PA teaching certification, that not only were her credit –hours not recorded with the PA Department of Education, but also that Imani and Marlon Barnett were not providers or authorized by the state to have workshops or professional development sessions for Act 48 credits.

11. Barnett, Raiford, or Imani never gave Plaintiff any credit or extra pay for over time and for being ordered off a contracted vacation to come to work for free.

12. Barnett and others stated we would get a raise from money donated for that purpose, beginning in September 2010.

13. In September 2009 up to today 6/16/2010, no raises were given to Plaintiff.

14. On or about August 31, 2009, another At-Will, contract was in effect until August 31, 2010, for $30,000.00, plus benefits including merit, and Christmas bonus pay.

15. Plaintiff was to get $30,000.00 for the year 2009-2010, plus benefits, and opportunities just like anyone else for promotions.

16. Plaintiff entered into an Agreement-Contract with Milton Raiford, Imani Christian Academy, and Dr. Marlon Barnett to teach 5th grade students, social studies, reading, spelling, English, mathematics, penmanship, and science.

17. Plaintiff and all the above individual defendants are African American origin.

18. From August 2008-June 2010, Milton Raiford and Marilyn Barnett hired persons younger, and less qualified than Plaintiff for paid administrative jobs, with no opportunities for Plaintiff and for unjust causes.

19. In August 2009, Mr. Fetteroff, the Imani Board Chairperson met with staff at Imani Christian Academy. He asked staff if they had opportunity to discuss concerns, and Plaintiff told the truth and said yes and no.

20. Plaintiff told him that she was being discriminated against regarding promotional opportunities and opposed hiring friends and less qualified and incompetent people to do administrative jobs. She opposed not being treated fairly by not having the same respect and opportunities than her younger, white, and/or religious affiliation peers.

21. Plaintiff found out that the third grade and first grade Caucasian teachers were allowed to go to classes, unknown to N'Jai, to further their Act 48 state certifications, Imani through Maisha Johnson, Barnett, and Raiford paid for them to attend. Whites would be welcome at Galas.

22. Plaintiff was not only excluded from all but 1 Gala 2007-2009, but also Lisa Finney and Sherice Coles took pictures of Plaintiff without her permission during a summer camp

school when she was not at her best. Plaintiff told Bill Dodd and other (in writing), not to use two of the pictures taken during that time for a Gala.

23. To cover up the invasion of privacy, Sherice Cole and Leesa Finney, did not allow Plaintiff to go to the Gala, that was using her professionalism as a teacher at this affair in front of many professional and their families.

24. Those pictures were not only showed at the Gala but also they were published onto a USB flash drive and given out to hundreds of people. Everyone else had a chance to get dressed up.

25. Plaintiff was also not even allowed by Sherice Coles and /or Barnett et al a copy of a flash drive about her personal and professional self.

26. Barnet took the easy or first grade off Plaintiff and gave it to a Caucasian teacher because Marlon Barnett stated, "White people don't know anything about black children."

27. Plaintiff was not told or allowed the same thing.

28. Plaintiff told Fetteroff that she worked from a GED to a PH.D level to get to where she was in her career and it was not being honored.

29. Marlon Barnett told staff and Fetteroff that Plaintiff was lying and did not have a PH.D. She twisted the words of Plaintiff and called her a liar in private and infront of staff several times, because Barnett was angry about Plaintiff opposing the discriminatory treatment in promotional employment actions.

30. On or about September 1, 2009-June 16, 2010, Milton Raiford and Marlon Barnett told Plaintiff and staff (publicly and privately), that no one likes N'Jai. Plaintiff is selfish. Plaintiff is not a leader. He stated all the education she has does not matter. This was without provocation.

31. More specifically, Raiford and Barnett stated Plaintiff embarrassed them in front of Mr. Fetteroff, and admitted that their actions was because of her statements made to Fetteroff at the meeting, they threatened to fired her.

32. Plaintiff NJai found out even after prior adverse employment actions that from about September 2009 through about June 16, 2010, because of her opposition to their actions and out of sheer spite, Raiford, Barnett, et al hired a vice principal, 2 deans of elementary, middle and high school deans, summer school principals, and an incompetent curriculum supervisor, without any possibilities for Plaintiff as her white male, and younger counter parts for promotions.

33. To twist the truth and slander Plaintiff, Milton Raiford and Marlon Barnett, Jason Washington, Maisha Johnson, et al belittled Plaintiff in front of and to staff, parents and students, claiming because of her sin and alleged mental illness for speaking out, they used as a justification for discriminatory hiring and promotion practices.

34. Plaintiff N'Jai has and had prior to and during 2009, in college for approximately 26 years, she has 71 doctoral credits in educational leadership (9 credits were dissertation credits), has a bachelors and masters in teaching which is leadership for 26 years, and currently she obtained another masters in (K-12) Administrative and Policy Studies from the University of Pittsburgh.

35. Neither persons hired have any degrees at all, or has a reading specialist degree, or no PA certification or formal teaching experience, and/or are younger and/or Petra church members.

36. On or about November 3, 2009-6/16/2010, Milton Raiford Jr. and Marlon Barnett ordered Jason Washington, Maisha, and others to follow Plaintiff around the building, stated Plaintiff was crazy (mentally ill and might kill someone), to use as an excuse for unlawful hiring or promotional practices.

37. On or about November 1, 2009-6/16/10, Milton Raiford Jr. told staff, students, and/or church members that Plaintiff was not a Christian and did not believe in Jesus. He stated, in a prayer circle in front of staff and Plaintiff that she was a witch and practiced witchcraft, and was a demon.

38. Plaintiff is a Christian, got baptismal certificate, and has been trying to practice Christianity but her right to be a Christian and practice it was being interfered with by Milton Raiford, Jr., Dr. Barnett, and others slanderous unsubstantiated statements.

39. As a result of the slander to church going members, from their Elder of Petra Church, without any provocation most people began shunning, repeating slanderous lies, telling children and parents Plaintiff was anti Christ and other slanderous lies.

40. Plaintiff's professional reputation was again tarnished for unfair and unlawful reasons.

41. Parents and students were questioned and made to listen to negative statements from Barnett, Allyson, Sherice Coles, Derrick Turner, Maisha, Jason Washington, and Raiford about Plaintiff N'Jai without N'Jai being able to defend herself or without due process. They refused to let her talk or meet to discuss with parents, etc.

42. Some children became extremely disruptive without any disciplinary actions taken against them, but their actions were blamed on N'Jai and it was stated by Raiford and Barnett the children were acting that way because N'Jai was a demon, evil, witch and anti-Christ.

43. Yet when the now Caucasian first grade teacher had the fifth graders, they misbehaved and she got help and N'Jai was made to get them.

44. Even though they would act out with other teachers, those teachers were given help, got disciplinary action against the students, and were not slandered.

45. A child walked out of the building because he did not want to go to the Dean as N'Jai instructed him to do 4 times. She wrote him up. Barnett, Sherice Coles, Jason

Washington, and Raiford blamed N'Jai for the child's bad behavior. Accused N'Jai of hitting the child when she did not touch him. Had two or more meetings with the parents against N'Jai without any due process for N'Jai and then took the child out of the class to make it seem like N'Jai was responsible for doing something to the student. It was a lie.[1]

46. Not only was the child disruptive to N'Jai, but also he misbehaved all the time and has known emotional issues prior to N'Jai even having him.

47. Marlon Barnett, Derrick Turner, and Allyson Brown et al ordered Plaintiff, N'Jai to give extra work to the student because the student was in another classroom. Plaintiff gave the work, but the student was not taught the work. Derrick Turner and others accused Plaintiff of not giving the student work and used that lie to harass Plaintiff and cause a break down in the relationship with the parents and student.

48. It took months and months for Plaintiff to finally get a meeting she requested since 11/9 with the Parents and Barnett. When she did have a meeting, the truth came out and it showed Plaintiff was slandered. Plaintiff found out that she was accused of hitting the child and not giving him work and who said it on June 12, 2010.[2]

49. Raiford stated despite what the outcome of the meeting was and even if she did not do what they stated, Plaintiff was not to come back in the fall because he was tired of her, she did not believe like him and she was mentally ill and accused her of constantly bothering people when she did not.[3]

50. Dr. Barnett stated she posted jobs when there were no jobs posted as she stated, (9/09- about 6/10). There were not even the legal posting for the PA Human Relations Commission, and other labor mandatory posting in that school from 1/2010-6/16/10.

---

[1] See notes from other students proving the kid constantly disrupted class and disrespected N'jai and that she never touched him. See video and audiotapes of the actions of the students and Barnett and Raiford regarding this slanderous crime.
[2] Audio taped of meeting.
[3] Audio taped.

Complaint—                                                                  7

51. Plaintiff was wrongfully put out of the building for what Raiford (an attorney) stated was because she told Fetteroff she was filing a complaint against them.

52. From 1/13/09-4/ /10, Dr. Barnett told Plaintiff N'Jai that she would pay her and 3 high school students for designing, implementing, and directing an after school program.

53. Dr. Barnett stated in various meetings that she had funds to pay students and N'Jai for an after school program. Dr. Barnett also stated the YMCA will pay me as well, for incorporating and directing that after school program too.

54. From 1/13/09-4/ /09, Dr Barnettt did not pay Plaintiff N'Jai, or the students. Plaintiff have to pay the students she gave a verbal contract to that they would be paid by Imani through Dr. Barnett.

55. Dr. Marilyn Barnett told Plainitt N'Jai to take over the YMCA afterschool program, by designing the program and incorporating it into the already after school program.

56. Dr. Barnett and Latoya Walters told Plaintiff N'Jai that she would get paid from the YMCA, plus what she had coming out of the funding separate from the YMCA or Merit pay.

57. Dr. Barnett and Latoya Walters did not pay N'Jai any money for the 3:00 to about 5:00 or 6:00 over time she worked without pay for part of 2008-09 and 2009-2010 school years.

58. Plaintiff found out through talking with YMCA (Thomas Wallace) officials, there was not going to be a YMCA program at Imani because Imani had no occupancy permit, was not up to state compliance with the building, and the state would not approve the program.

59. N'Jai found this out in or about March 21, 2010. So from 1/09-3/10 she was told by her immediate supervisor, that she'd be paid as other professionals are, just to trick Plaintiff into designing, organizing, planning, implementing, and evaluating separate from her contracted 5th grade teaching job.

60. Also, when Plaintiff insisted on being paid as promised, in writing-she was harassed, called a disbeliever in Jesus, stated she was, mentally ill, and do not deserve any promotions and should be fired.

61. She was ostracized, constantly criticized for things that others was not threatened and bullied about. Staff began to shun her. Those who did not, were harassed as well for having anything to do with Plaintiff.

62. Raiford stated, "You have no friends. No one loves you." When Plaintiff stated God and others do, Raiford stated, "Not at Imani you won't."

63. She was belittlement in front of staff during a prayer circle, where Raiford and Barnett claimed Plaintiff was not dedicated to Imani, was not following the mission, yet they used the work of Plaintiff to help run their school programs.

64. Plaintiff has a right to believe in God, Jesus and the Holy Spirit, and to choose her religion as Christianity without someone (a so-called Elders in a church), thinking and using administrative positions to stop her.

65. The motivation of the Defendants were by slander and defamation, that was an excuse to discriminate against N'Jai based upon age, race, so-called disability, and religion not to give her a right to equal promotions, to keep funds donated to her as a teacher, to use coercion and intimidation to force her into not opposing anything, and to refuse to give her full ($1500 merit pay).

66. Marlon Barnett, stated that Plaintiff was delusional and/or used poor judgment when she ask Mr. Biggs how he felt about black on black discrimination, and disagreed with him concerning an issue on the NAACP in Pittsburgh. [4]

67. Marlon Barnett and Raiford, took Plaintiff out of her fifth grade classroom, and forced N'Jai to campaign for the NAACP by copying documents involving the NAACP, calling

---

[4] Plaintiff taped what she, Marlon Barnett and Raiford said because she was being defamed and/or slandered and she needed to be able to prove it.

Complaint—

9

Pittsburgh Board of Public Education and its schools to find students for the NAACP, or be fired   See NAACP information forced upon N'Jai.

68. Marlon and Raiford ordered Plaintiff N'Jai to tell teachers and parents that the reason she was pulled out of her fifth grade classroom to do political work or office filing is because there was something wrong with Plaintiff N'Jai mentally and spiritually.

69. Plaintiff was bullied and ordered to not think, and just function by her heart, and let Raiford think and interpret Christianity for her because there was something mentally wrong with her for disagreeing with and opposing reverse discrimination and retaliation.

70. Marlon Barnett and Raiford's adverse employment actions were not in the contract and were not even reasonable.

71. Within the same time frame, Dr. Barnett and Raiford changed the contract in midstream, to a person will not get paid for the entire $30,000.00 or contract if he/she does not come back the following 2009-2010 school year or work until about 6/16/10.

72. Then the two Imani Christian Academy administrators fired Plaintiff 6/11/10 or told her she cannot come back next 2010-2011 school year.  She was told her checks and/or benefits would be cut off as of 8/15/2010.

73. On 8/31/10, Plaintiff did not get paid because she was wrongfully terminated for unlawful reasons.

74. Plaintiff notified the NAACP and wanting to file a complaint against Dr. Barnett for using her position as Imani Chrisitan Academy to enforce NAACP work on N'Jai without additional pay.  See cert mail receipt.

75. Plaintiff notified NAACP more than once, but NAACP never responded to any of her requests to handle the actions of Barnett.

76. For 2 years Dr. Barnett had Plaintiff N'Jai under the assumption that she'd be paid for an after school program, and for initially designing original conceptual ideas.

77. Dr. Barnett refused to pay from the original funds given as charitable gifts, grants, and/or other funds and conjured up slanderous lies that N'Jai did not turn in a conceptual idea, on the correct form, when Plaintiff helped design the correct form and Allyson and Maisha confirmed N'Jai did turn 97% of everything requested on time.[5]

78. Dr. Barnett and Raiford paid Maisha Johnson and Derrick Turner $1500.00 for merit pay, when they would miss work, deadlines, not turn in conceptual ideas, in their 20-30+ years, and unlike the excellent work of N'Jai for capricious reasons.

79. Had Dr. Barnett and Maisha Johnson not lied about the professionalism of Plaintiff, N'Jai would have gotten over $3,000.00 more than given.

80. From 2009- 6/15/10, Dr. Barnett and Maisha Johnson kept $2600.00-3000.00 in additional merit pay funds of Plaintiff N'Jai based upon provable untruth claiming Plaintiff did not turn in Conceptual Ideas on time or on correct form that she (N'Jai) helped design and introduced to Imani.[6]

81. A White friend-peer of Maisha Johnson was paid and given 1500.00 x 3 maximum amount of merit pay for less things than plaintiff did, 2009-2010.

82. Maisha Johnson (Friend of Raiford), and Males (ministers of the church) who were absent and/or late almost every day for years, who could not handle the class better or any better than Plaintiff got maximum merit pay vs. Plaintiff who was never late, absent a handful of times in 6 years, always prepared, turned in all things on time 97% of the time, got $300.00, 600.00, and approx 500.00-instead of 1500, 1500, and 1500.

83. Dr. Barnett and Maisha, Raiford stold several of N'Jai's original ideas and did not acknowledge the source from Plaintiff N'Jai, but claimed they were their own, and altered various aspects to hide the pragarism..

---

[5] See email, texts, and audio of N'Jai being told everything was in by Barnett's own assistants. See proof she tunred in on correct form.
[6] See text and emails of Allyson Brown stating she turned them in and apologizing herself for giving teacher an incorrect form. There was no penalty for Allyson.

**Complaint—** 11

84. Dr. Barnett and Raiford became upset and threatened to fire and fired Plaintiff for stating she wanted to be paid for the after school program, extra merit pay like younger and white peers, and to be paid for training teachers.

85. Elder Enos who is a male, stated he wanted him and/or his maintenance crew to get paid for working overtime, and for extra work. Yet, he did not get fired, or threatened.

86. All males get paid extra for extra workloads. There is no professional damage to their reputation.

87. Milton Raiford, Jr stated in front of staff that Plaintiff was old and fat, needed to stop eating those chips, need a man was delusional, because she complained of his public harassment and he retaliated against for her opposition to discrimination against the Pittsburgh Board of Public Education. [7]

88. He, an attorney stated because of the above attacks Plaintiff was fired, and escorted out of the building for peacefully (in writing), opposing the discrimination.

89. Marlon Barnett and Raiford stated that because she participated in protected Title VII, ADA, Section 1983 and First Amendment activities, that ment Plaintiff was crazy, delusional, not a Christian, and did not deserve promotions, full pay for overtime, or even human respect.

90. Plaintiff N'Jai notified Fetteroff and nothing was done. On 6/16/2010, the same day that she was literally put out of the school building, she got an email from Ray Sisak, that had an attachment Whistleblower Act Policy of Imani Christian Academy from Fred Fetteroff. Even though it claimed that no one would be retaliated against for coming forward with complaints about administration and who to contact, absolutely nothing was

---

[7] Tape of Marlon stating that Raiford does not like suing his constituents, the Pittsburgh Board or Education. Tape of Raiford constantly harassing Plaintiff about pro se protected activities, when he had no right or license to legally advise me because he was disbarred. Plaintiff taped all conversations with Barnett and Raiford et al to prove that they were harassing and slandering her.

**Complaint—** 12

done to Raiford, no due process was given to Plaintiff, and not one notified her at all about anything else. They allowed the violations of their own policy.

91. As a result of their adverse employment actions, Dr. Barnett and/or Milton Raiford who are in charge of funding misappropriated money, and breached Plaintiff's contract for capricious unjust reasons, based upon gender, race, perceived disability, religious interpretation and size and age.

92. As a result they slandered, defamed, and committed libel against Plaintiff N'Jai. They violated their own Whistleblower Policy. They violated Section 1981a and 1981 based upon reverse racism against Plaintiff.

93. As a result they violated the Equal pay Act of and other laws and Acts that Plaintiff is in the process of exhausting her administrative remedies in the EEOC for.

94. On or about 3/2, 4, 5, and 7, 2005 through 3/12/2010 or 21 times, the Pittsburgh Board of Public Education, told PA Public Employees Retirement Service, that Plaintiff N'Jai wanted to change her address from PO Box 10133, Pittsburgh, PA 15232, to 519 Rebecca Avenue, Pittsbugh, PA 15221.

95. On or about 3/2-5/05 though 3/12/2010 or 21 times, the Pittsburgh Board of Public Education, put into writing the PA Public Employees Retirement Service, that Plaintiff N'Jai wanted to change her address from PO Box 10133, Pittsburgh, PA 15232, to 519 Rebecca Avenue, Pittsbugh, PA 15221.

96. Plaintiff never gave the Board of Education any permission to access her confidential retirement information using her social security number, to change her address from PO Box 10133, Pittsburgh, PA 15232, to 519 Rebecca Avenue, Pittsbugh, PA 15221, on or about 3/2-5/05 through 3/12/2010 o 21 times.

97. The Board knowingly and maliciously retaliated against Plaintiff N'Jai by changing her address from PO Box 10133, Pittsburgh, PA 15232, to 519 Rebecca Avenue, Pittsbugh, PA 15221.

98. Plaintiff became aware of the hidden adverse employment actions of her previous employer on or about 3/1-2/10 when her checks were cut off and the PSERS told and showed her in writing how that happened.

99. As a result of the Board's slanderous lie caused Plaintiff (A State of PA Early Retireee), to lose 2 checks on time, and her account was cut off from the Board changing her address over and over, causing PSERS not to know what her address is.[8]

## COUNT 1
## BREACH OF CONTRACT/NEGLIGENCE

Defendants failed to perform the duties in the written contract in a safe and effective manner leading to the slanderous retaliatory termination and loss of $5-10,000.00 in monetary loses plus benefits sustained by Plaintiff.

Defendants failed to promote and fairly execute the their duties to Plaintiff, causing her to lose additional merit pay and administrative salaries.

Defendant Board of Education failed to follow the Privacy Act

Defendant Board of Education deliberately failed to not used slander, defamation and libel to retaliate against the Plaintiff for participating in protected activities that were pending against them by the same Plaintiff.

---

[8] See signed affidavit from PASERS that the Board did this change the address w/o Plaintiff's permission.

Complaint— 14

Defendant Board of Education deliberately failed to not use a governmental political subdivision to retaliate against Plaintiff by accessing confidential information in violation of the Social Security Number Privacy Act 454 of 2004.

### COUNT TWO:
### DEFAMATION OF CHARACTER, SLANDER, AND LIBEL

Defendants deliberately failed to not slander and defame the professional character of Plaintiff N'jai, in a manner that caused further destruction to her Professional Character with some parents and some students and some staff.

Defendants, Raiford, Barnett, Johnson, Washington, Derrick Turner, and Brown knew that they were slandering Plaintiff and refused to allow her impartial due process to defend herself.

Defendants put in writing that Plaintiff did things she have proof she did not do to justify stealing money owed to her from charitable donation specifically for teachers and teaching.

Defendants have no medical license to decide Plaintiff is mentally ill and crazy. Plaintiff never got examined from any defendants, nor did she give anyone permission to access, see, nor have any medical records whatsoever.

### COUNT 3
### WHISTLEBLOWER ACT

Defendants retaliated against her immediately after and during Plaintiff's opposition to their wrongful actions.

Defendants stated they were acting unlawfully towards Plaintiff because of her reporting and opposition to their wrongful actions against her.

Defendants put out a Whistleblowers Act Policy only with the intentions of defrauding the court and pretending to have such a policy without any implementation to that policy whatsoever.

Defendants retaliated against Plaintiff N'Jai in violation of that policy.

At no time were Plaintiff N'Jai or others from 2004-2010 trained in or knew about any Whistleblower Act, Title VII Act, ADA Act, IDEA Act or any other Act and Raiford and Barnett retaliated against anyone or Plaintiff for even discussing the law.

Defendants failed to report to Child and Youth Services that a child was being sexually molested by a family member.

The Defendants failed to report a fugitive and dangerous sex offender Dave and allowed him to be around children from 2004-2010. He was allowed in the bathrooms every thirty minutes while children were in the bathrooms.

Raiford told police and the public Dave was not allowed around students, but only worked in the Church hiding the other facts.

The Defendants failed to report guns and drugs turned into to them by children and pulled out and showed her a gun and drugs during a meeting with Plaintiff trying to intimidate her.[9]

## COUNT 4
## SECTION 1981A, 1981

Section 1981 provides as follows:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

---

[9] Taped.

Complaint—

16

evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Despite whether they Raiford, Barnett, Maisha, et al. called whites "Whitey," and stated all white people are racist, because N'Jai stated their remarks were racist, she was retaliated against. However, when white teachers and even the Board members wife stated some remarks of Raiford and Barnett were racist, they were not attacked, slandered, ridiculed, followed around or terminated.

Defendants allowed all white teachers to have opportunities that were not available to Plaintiff and gave them assistance in disciplining students, they helped whites with extra curriculum activities, gave them more merit pay, and no public ridicule and slander for speaking out against wrongful actions of others.

Defendants did not allow black teacher Plaintiff opportunities that were available to her white counterparts in retaliation for complaining about adverse actions. They did not provide assistance with extra curriculum activities; they did not support her when she cried about wrongful actions as they did whites. They did not discuss confidential information to staff members, parents and students regarding white staff as they did Plaintiff. They respected the education and experience of white teachers unlike Plaintiff.

Complaint— 17

Defendants allowed whites to disagree with some NAACP issues and other actions related to race and racism, but they used Plaintiff N'Jai as a model to retaliate against for her disagreeing with the NAACP and Barnett's unlawful practices using her position with the NAACP to discriminate.

Defendant NAACP refused to and failed to stop Marlon/Marilyn Barnett from abusing her Chairperson position by forcing Plaintiff to do campaign work for NAACP, after being told three times by N'Jai to make her stop.[10]

## COUNT 5
## FAIR LABOR STANDARDS ACT
## EQUAL PAY ACT
## Ledbetter Act

Defendants paid males more money than Plaintiff, even though they were less qualified or not qualified at all.

Defendants Raiford and some other males had their rent and other personal expenses paid out of money that was to be used for teaching and learning, plus a $60,000-70,000 salary.

Plaintiff did not have her rent or personal expenses paid even though she was working for $50,000.00 less than she would have made in a public school.

Defendants paid Derrick Turner, Isaac Compton, and other males more than 30,000.00 from 2004-2010. They were paid at least $7,000.00 or so more than Plaintiff.

From 2004-2010, all males, whites and young teachers like Maisha Johnson were paid extra for extra work.[11]

---

[10] See US Postal Certified Returned receipts to NAACP from N'Jai.
[11] See payroll information created by Imani Bookkeeper.

Complaint— 18

Derrick Turner and Isaac Compton were late often from 2004-2010, their class was out of control like any other teacher, they did not turn in conceptual ideas on July 31, 2009 as did Plaintiff, and got more merit pay. When they worked over time they were paid for their services. [12]

Defendants violated the Equal Pay Act by not paying Plaintiff like they paid males named here in this suit.

They violated the Equal Pay Act when they neglected to stop stating that women were inferior to men.

Defendants violated the Equal Pay Act when they neglected to promote Plaintiff as they did mostly all males or at least Derrick Turner, Isaac Compton, Jason Washington, Calvin Murphy, and others.

### COUNT 6:
### INVASION OF PRIVACY/
### CONSISTENT BAD REFERENCES

Defendant Pittsburgh Board of Public Education continues to harass and retaliates against Plaintiff [N'Jai] for her participation in protected Title VII, Whistleblower Act, ADA and other activities.

Defendants continue to give Plaintiff's employers bad references causing problems between Plaintiff and her employer by giving them bad references without Plaintiff's request and/or permission or knowledge.

Defendants accessed confidential information without any due process from Plaintiff from 2004 or 2005 through 2010 without Plaintiff's permission or knowledge.

---

[12] See sign in sheet for all of 2009. See payroll data sheet given to Plaintiff by an anonymous person.

Defendants used Plaintiff's social security number to change confidential information of Plaintiff without due process or knowledge of Plaintiff.

Defendants used and bribed Authur Rabare and then sent him to Imani Christian Academy to work and to continue to harass Plaintiff by having him call her to get information about suits against them, after bribing Aurthur Rabre with jobs.

### DAMAGES:

WHEREFORE, Plaintiff [N'Jai] seeks compensatory, punitive, and injunctive and any other damages derived from the above prima facie claims available to her in both their professional and personal capacities.

Respectfully Submitted:

*Jacquelyn N'Jai*
Jacquelyn B. N'Jai

Complaint—                                                                   20